**SO ORDERED.**

**SIGNED this 2 day of October, 2013.**



_____
A. Thomas Small
United States Bankruptcy Court Judge

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

IN RE:

PROVINCE GRANDE OLDE LIBERTY, LLC,        CASE NO. 13-01563-8-ATS

    DEBTOR                                                CHAPTER 11

---

ERIC M. LEVIN AND HOWARD SHAREFF,

    PLAINTIFFS,

v.                                                ADVERSARY PROCEEDING
                                                  NO. 13-00122-8-ATS
PEM ENTITIES, LLC AND
PROVINCE GRANDE OLDE LIBERTY, LLC,

    DEFENDANTS.

**ORDER DENYING MOTION TO DISMISS**

    The matters before the court are the motion of defendants Province Grande Olde Liberty, LLC and PEM Entities, LLC to dismiss the complaint or, in the alternative to fix or liquidate

1

the plaintiffs' claim.  A hearing was held on September 5, 2013, in Raleigh, North Carolina.

On March 11, 2013, Province Grande Olde Liberty, LLC filed a petition for relief under chapter 11 of the Bankruptcy Code, and is a debtor in possession.  On May 8, 2013, the debtor filed a motion to sell free and clear of liens, twelve single-family, residential lots.  The motion to sell sought approval to distribute the proceeds of the sale to PEM as the senior secured creditor.

On May 22, 2013, Eric M. Levin and Howard Shareff, who are the plaintiffs in the proceeding and who are also creditors in the debtor's chapter 11 case, objected to the motion to sell.  The plaintiffs objected to the distribution to PEM of the proceeds of the sale of the lots and sought an order from the court that directed the proceeds be held by the debtor.  Judge J. Rich Leonard granted the motion to sell but ordered that any proceeds be held by the debtor for thirty days, within which time the plaintiffs were to file a lawsuit against PEM setting forth a bona fide dispute as to the senior secured interest of PEM.

The plaintiffs filed the complaint on July 25, 2013, in which they assert claims of equitable subordination and recharacterization of the claim of PEM, pursuant to 11 U.S.C. §§

105(a) and 510(c).  The complaint also includes a cause of action for avoidance and recovery of a fraudulent transfer pursuant to 11 U.S.C. §§ 544, 548(a)(1), 550, 551, and the North Carolina Uniform Fraudulent Transfer Act, N.C. Gen. Stat. § 39-23.1 et seq; N.C. Gen. Stat. § 44A-4(g).  On August 12, 2013, Province Grande Olde Liberty filed its motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and Rule 7012(b) of the Federal Rules of Bankruptcy Procedure.  PEM filed its motion to dismiss on August 15, 2013, in which it "adopts and incorporates the allegations and relief sought in Province Grande Olde Liberty's motion to dismiss.

## ALLEGED FACTS[1]

The debtor's principal assets consist of developed and undeveloped land in the Olde Liberty Golf and Country Club ("Olde Liberty Club"), a golf and single-family home development project in Franklin County, North Carolina.  To purchase the Olde Liberty Club land, the debtor obtained loans from three

---

[1] These facts are taken from the complaint, which is viewed in a light most favorable to the non-moving party, the plaintiff.  GE Inv. Private Placement v. Parker, 247 F.3d 543, 548 (4th Cir. 2001)("On a Rule 12(b)(6) motion to dismiss, a court must accept the factual allegations of the complaint as true and must view the complaint in the light most favorable to the plaintiff.") (citing Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993)).

banks and investment funds.  One of the loans was from Paragon Commercial Bank, which provided a loan of $4 million that was later increased to $6.25 million (the "first Paragon loan").  The first Paragon loan was used by the debtor to obtain the portion of the Olde Liberty Club.

**Lakebound Fixed Return Fund LLC**

In 2007, Howard Jacobson and Richard Deckelbaum formed Lakebound Fixed Return Fund LLC ("Lakebound").  Lakebound was designed as a real estate investment company which would offer a fixed return to its investors.  Lakebound was managed by SilverDeer Management, which was controlled and managed by Jacobson.  Levin and Shareff collectively invested $1 million in Lakebound, and subsequently brought a lawsuit related to the investment against Jacobson and the debtor that is currently pending in the North Carolina Business Court.

Lakebound's private placement memorandum and operating agreement state that its goal of paying ongoing fixed returns would be accomplished by investment activities limited to acquiring, at a discount, ownership interest in projects with current or imminent cash flow that were prepared to make cash distributions and making loans secured by first priority liens on real property, other tangible assets, or ownership interest in cash-generating companies.

4

Lakebound raised funds of $1,965,000.00 between September 2007 and March 2008. The funds were not used as represented in the formation documents; rather, a Ponzi scheme was set up wherein the new investment money was directed to SilverDeer which paid out returns to old investors. Once it was clear that the fund would get no further investment money, the payouts ceased. The investment funds were also diverted to Jacobson and Deckelbaum, through SilverDeer LLC, a firm set up in 2003.

**Olde Liberty Club**

In 2009, the Olde Liberty Club, LLC defaulted on its obligation to Paragon under the first Paragon loan, triggering a foreclosure sale of a portion of the Olde Liberty Club property. SilverDeer Olde Liberty AA Lots, LLC, an entity formed by Jacobson, changed its name to Province Grande Olde Liberty, LLC and purchased the part of Olde Liberty Club at foreclosure for $6.6 million. The majority of the purchase price was funded by a loan from Paragon to Province Grande Olde Liberty, LLC (the "second Paragon loan"). The second loan, and underlying purchase, allowed Jacobson and Richard Wolf to continue to operate the property under ownership of Province Grande Olde Liberty, LLC, which the is now the chapter 11 debtor.

Paragon agreed to extend the second Paragon loan to Province Grande Olde Liberty, LLC on Jacobson's representation

5

that new investors could contribute $250,000 toward the purchase. Instead of obtaining new investments, $188,000 of Lakebound funds was used without the knowledge or consent of Lakebound's members. The plaintiffs contend that these funds were misappropriated Lakebound funds, without which it would not have been possible for the debtor to purchase the Olde Liberty Club property.

**Settlement Agreement With Paragon, Formation Of PEM**

In 2011, after Province Grande Olde Liberty, LLC defaulted on its obligation under the second Paragon loan, Paragon initiated a new foreclosure action. A settlement agreement was reached between Province Grande Olde Liberty, LLC and Paragon concerning the foreclosure and other issues related to the second Paragon loan. In this agreement, PEM would purchase the second Paragon loan for $1,242,000. PEM was not a party to this agreement, Paragon's representatives negotiated solely with Jacobson and Wolf, believing that Jacobson and Wolf had the authority to bind PEM. PEM was formed in 2011 by Stanley Jacobson, a member of Province Grande Olde Liberty, LLC.

The $1,242,000 purchase was funded by two deeds of trust pledged by Province Grande Olde Liberty, LLC against its land for the benefit of PEM. The first deed of trust is security for a loan in the amount of $292,000 from Paragon to PEM. The

second deed of trust is security for an additional loan that PEM used in the purchase of the second Paragon loan.  This deed of trust recites that PEM is indebted to Joseph Deglomini and Joseph Simone in the amount of $650,000.

PEM's claim has been scheduled as a secured claim in the amount of $7 million in the debtor's schedules.  On December 11, 2012, within three months prior to its chapter 11 filing, the debtor paid $462,146.15 from land sale proceeds to PEM based on PEM's security interest.  Since filing its bankruptcy petition, the debtor has moved to sell property free and clear with proceeds of $600,000 to be directed to PEM.  The debtor's chapter 11 plan provides that the debtor will surrender substantially all of its property to PEM in exchange for a $3 million reduction in PEM's secured claim.  General unsecured creditors, which include the plaintiffs, pending resolution of their state court action, will receive a small fraction of their claims.

## DISCUSSION

### Standard

A party may move, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and Rule 7012(b) of the Federal Rules of Bankruptcy Procedure, to dismiss a complaint for failure to state a claim upon which relief can be granted.  To demonstrate

entitlement to relief and survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (emphasizing that a pleading providing "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.").

In their complaint, the plaintiffs assert four claims for relief.  First, the plaintiffs bring a claim in which they ask that the court pierce the corporate veil of PEM, substitute the debtor for PEM in the settlement agreement and related transactions such that the debtor is liable for the debts of PEM and payment by PEM under the settlement agreement constitutes payment by the debtor to satisfy the second Paragon note, and order that the second Paragon deed of trust be marked as satisfied.  The plaintiffs state that they bring these claims for relief under a theory of equitable subordination and alter ego liability.

In their second claim for relief, the plaintiffs alternatively ask that the court recharacterize PEM's debt as an equity payment to the debtor that allowed the debtor to satisfy the second Paragon note.

The third claim for relief, alternatively requests that the court reduce PEM's claim to the amount of actual cash expended,

$300,000, and subordinate it to the claims of the plaintiffs, or that the claim be transferred to the estate.

The final claim for relief seeks avoidance of and recovery on a fraudulent transfer pursuant to 11 U.S.C. §§ 544, 548(a)(1), 550, 551, and the North Carolina Uniform Fraudulent Transfer Act.  Here, the plaintiffs argue that the debtor's transfer of $462,146.15 to PEM on December 11, 2012 constitutes a fraudulent transfer under § 548(a)(1) and that defendant PEM is liable to the estate for the $462,146.15 transfer pursuant to 11 U.S.C. §§ 550(a) and 551.

**Equitable Subordination**

Section 510 of the Bankruptcy Code provides that the court may "under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim or all or part of an allowed interest to all or part of another allowed interest." 11 U.S.C. § 510(c)(1).

**Recharacterization**

The recharacterization of an allowed claim "is well within the broad powers afforded a bankruptcy court in § 105(a) and facilitates the application of the priority scheme laid out in § 726 [of the Bankruptcy Code]." In re Official Committee of

9

Unsecured Creditors for Dornier Aviation (North America), Inc., 453 F.3d 225, 231 (4th Cir. 2006).

The factors a court may consider in determining whether it should recharacterize a claim include:

> (1)The names given to the instruments, if any, evidencing the indebtedness; (2) the presence or absence of a fixed maturity date and schedule of payments; (3) the presence or absence of a fixed rate of interest and interest payments; (4) the source of repayments; (5) the adequacy or inadequacy of capitalization; (6) the identity of interest between the creditor and the stockholder; (7) the security, if any, for the advances; (8) the corporation's ability to obtain financing from outside lending institutions; (9) the extent to which the advances were subordinated to the claims of outside creditors; (10) the extent to which the advances were used to acquire capital assets; and (11) the presence or absence of a sinking fund to provide repayments.

Id. at 233.

Essentially, the plaintiffs maintain that the debtor owns its property as a result of $188,000 of the plaintiffs' funds that were misappropriated by Lakebound. The defendants argue that the plaintiffs do not have standing to bring this action and that it should be brought by Lakebound. The court disagrees. The plaintiffs, as they contend, suffered a particularized injury as a result of the defendants' actions and have standing to bring their claims.

The plaintiffs allege that whatever rights they have in the debtor's property were compromised by inequitable maneuvering of

the debtor and PEM in connection with the sale of the Paragon note to PEM.  The plaintiffs have alleged sufficient facts to meet their burden under Twombly and Iqbal with respect to their claim for equitable subordination and for recharacterization, and the motion to dismiss is **DENIED**.  Furthermore, the court will not in connection with this motion to dismiss reduce the plaintiff's claim to $188,000.  The plaintiffs argue that they have a constructive trust on the property that is not limited to the amount of the misappropriated funds.

Finally, the parties have not addressed the fraudulent transfer and fraudulent conveyance claims and the court considers that those claims are not included in the defendants' motions.

**END OF DOCUMENT**