**SO ORDERED.**

**SIGNED this 5 day of December, 2014.**

_____
**Randy D. Doub**
**United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

IN RE:

| | |
|---|---|
| **PROVINCE GRANDE OLDE LIBERTY, LLC,** | **CHAPTER 11**<br>**CASE NUMBER: 13-01563-8-RDD** |
| **DEBTOR** | |

| | |
|---|---|
| **ERIC M. LEVIN; AND**<br>**HOWARD SHAREFF,** | **ADVERSARY PROCEEDING**<br>**NUMBER:13-00122-8-RDD** |
| **PLAINTIFFS,** | |
| v. | |
| **PROVINCE GRANDE OLDE LIBERTY, LLC; AND**<br>**PEM ENTITIES, LLC.** | |
| **DEFENDANTS.** | |

### ORDER

Pending before the Court is the Plaintiffs' Motion for Summary Judgment, the Brief in Support of Plaintiffs' Motion for Summary Judgment and the Supplement to the Motion for Summary Judgment filed by the Eric M. Levin and Howard Shareff (the "Plaintiffs") on September

15, 2014, the Response of PEM Entities, LLC to Plaintiffs' Motion for Summary Judgment filled by PEM Entities, LLC ("PEM") on October 9, 2014, and the Response in Opposition to Motion for Summary Judgment filed by Province Grande Olde Liberty, LLC (the "Debtor") on October 9, 2014. The Court conducted a hearing in Greenville, North Carolina on November 3, 2014, to consider these matters.

## PROCEDURAL HISTORY

On March 11, 2013, the Debtor filed a petition for relief under Chapter 11 of the United States Bankruptcy Code (the "Code") and is a debtor in possession. The Plaintiffs filed the Complaint in this adversary proceeding on July 25, 2013 in which they asserted claims of equitable subordination and recharacterization of the claim of PEM, pursuant to 11 U.S.C. §§ 105(a) and 510©. The Complaint also includes a cause of action for avoidance and recovery of alleged fraudulent transfer pursuant to 11 U.S.C. §§ 544, 548(a)(1), 550, 551, and the North Carolina Uniform Fraudulent Transfer Act, N.C. Gen. Stat. § 39-23.1 et seq; N.C. Gen. Stat. § 44A-4(g).

On September 15, 2014, the Plaintiffs moved the Court pursuant to Rule 56 of the Federal Rules of Civil Procedure, as made applicable by Rule 7056 of the Federal Rules of Bankruptcy Procedure, for summary judgment on the ground that there are no genuine issues as to any material facts. The Plaintiffs state they are entitled to a judgment as a matter of law on their claims for recharacterization of PEM's debt to equity, equitable subordination of PEM's debt and the claim for recovery of fraudulent transfers from the Debtor to PEM. PEM moves the Court to enter summary judgment in favor of PEM on all claims asserted by the Plaintiffs. The Plaintiffs, PEM, and the Debtor take the position that there are no genuine issues of material fact and this matter is ripe for decision.

**UNDISPUTED FACTS**

Howard Jacobson, the principal of the Debtor, formed Lakebound Fixed Return Fund, LLC ("Lakebound"). The Plaintiffs invested one million dollars into Lakebound. The Debtor obtained funds from Lakebound in the amount of $188,000.00 in order to close the purchase of the Debtor's principal asset.

As of the date of the petition, the Debtor's principal asset consisted of developed and undeveloped land, divided into lots, in the Olde Liberty Golf and Country Club (the "Olde Liberty Club"), a golf and single-family home development project in Franklin County, North Carolina. In order to purchase the Olde Liberty Club, the Debtor borrowed $6,465,000.00 from Paragon Commercial Bank ("Paragon" and the "Debtor's Paragon Loan"). The Debtor also obtained $188,000.00 from Lakebound for the remainder of the purchase price (the "Lakebound Funds"). In 2010, the Debtor defaulted on the Debtor's Paragon Loan. In 2011, Paragon began foreclosure proceedings on the note securing the Debtor's Paragon Loan.

On March 2, 2012, the Debtor, Howard Jacobson, Richard Wolf, CLIPS Acquisition, LLC ("CLIPS") and Paragon entered into a settlement agreement resolving the Debtor's Paragon Loan and a loan from Paragon to CLIPS, an entity which is also controlled by Howard Jacobson (the "Settlement Agreement"). The loan from Paragon to CLIPS was also secured by a number of lots of the Olde Liberty Club, the Debtor's principal asset.

The defendant PEM, is a Delaware limited liability company that was formed in December 2011 by Stanley Jacobson, Howard Jacobson's father. Stanley Jacobson was the sole member of PEM at the time of the execution of the Settlement Agreement. Stanley Jacobson and PEM are insiders of the Debtor pursuant to 11 U.S.C. § 101(31). The members of the Debtor include, but are

3

not limited to Howard Jacobson as AJHRLT Holdings, LLC, Robert B. Conaty, Stanley and Rhoda Jacobson, Richard Wolfe and several others. Under the Settlement Agreement, Paragon would transfer to PEM the Debtor's Paragon Loan, which was in the principal amount of $6,465,000.00, for the discounted price of $1,242,000.00. In order to fund the settlement of the Debtor's Paragon Loan, PEM borrowed $292,000.00 from Paragon ("PEM's Paragon Loan"). The settlement of the Debtor's Paragon Loan was funded by two deeds of trust pledged by the Debtor against its principal asset, Olde Liberty Club, for the benefit of PEM. The first deed of trust, in the amount of $292,000.00 for PEM's Paragon loan, secures a zero-percent loan from Paragon to PEM (the "First Deed of Trust"). The Debtor also entered into a second deed of trust, pledging additional property in Olde Liberty Club to secure an additional loan for funds that PEM used to settle the Debtor's Paragon Loan. The second deed of trust states that PEM is indebted to Joseph Deglomini ("Deglomini") and Joseph Simone ("Simone") in the amount of $650,000.00 (the "Deglomini-Simone Deed of Trust"). Deglomini and Simone required the Debtor to pledge a number of lots in the Debtor's principal asset, the Olde Liberty Club, and required subordination of the Debtor's Paragon Loan as a condition of Deglomini and Simone making the $650,000.00 loan.

PEM's claim for the purchase of the Debtor's Paragon Loan was designated by the Debtor in the Debtor's schedules as a secured claim in the amount of $7,000,000.00. The Debtor's schedules also reflect that Lakebound has a general unsecured claim in the amount of $188,000.00 for the Lakebound Funds. On July 3, 2013, each Plaintiff filed a claim in the Debtor's bankruptcy proceeding in the amount of $500,000.00.

4

## DISCUSSION

The Plaintiffs and the Defendants have all moved for summary judgment and are in agreement that no genuine issue of material facts exist in this case. "[S]ummary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (internal quotations omitted). In making this determination, conflicts are resolved by viewing all facts and all reasonable inferences in the light most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). "Only disputes between the parties over facts that might affect the outcome of the case properly preclude the entry of summary judgment." *Nationwide Mut. Ins. Co. v. McMahon*, 365 F. Supp. 2d 671, 674 (M.D.N.C. 2005) (citing *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 247-48 (1986)). Accordingly, the court must examine "both the materiality and the genuineness of the alleged fact issues" in ruling on this motion. *Id.* (citing *Faircloth v. United States*, 837 F. Supp. 123, 125 (E.D.N.C. 1993)).

The Fourth Circuit has recognized the affirmative obligation of the "trial judge to prevent 'factually unsupported claims and defenses' from proceeding to trial." *Felty v. Gres-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 2553, 91 L.Ed. 2d 265 (1986)). "[T]here is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party . . . If the evidence is merely colorable . . . or is not significantly probative, summary judgment may be granted." *Glover v. Lockheed Corp.*, 772 F. Supp. 898, 904 (D. S.C. 1991) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)).

## I. The Recharacterization of PEM's Claim from a Debt to an Equity Contribution.

PEM contributed $300,000.00 to fund the purchase of the Debtor's Paragon Loan (the "PEM Contribution"). The Plaintiffs contend that this PEM Contribution should be recharacterized from a debt in the Debtor's bankruptcy case to an equity contribution. The $300,000.00 was contributed by several entities including: Stanley Jacobson in the amount of $130,000.00 as a capital contribution; Robert B. Conaty in the amount of $100,000.00 as a capital contribution; and a $70,000.00 capital contribution from AIHL. AIHL is a trust established for the benefit of Stanley Jacobson's grandchildren. Stanley's middle son, Andrew Jacobson, is the trustee of the trusts that owns AIHL. *Stanley L. Jacobson Affidavit*, ¶ 17. AIHL was not at any time a member of the Debtor.

This Court has the authority to recharacterize a claim from a debt to an equity contribution when an analysis of the circumstances reveals that the contribution is more appropriately an equity contribution. A bankruptcy court's equitable powers have long included the ability to look beyond form to substance. *In re Official Committee of Unsecured Creditors for Dornier Aviation(North America), Inc.*, 453 F.3d 225, 231(4th Cir.2006); See *Pepper v. Litton*, 308 U. S. 295, 305; 60 S.Ct. 238, 84 L.Ed.281(1939). Further, "the Courts exercise of this power to recharacterize is essential to the implementation of the Code's mandate that creditors have a higher priority in bankruptcy than those with an equity interest." *Dornier Aviation,* 453 F.3d at 233.

According to the Fourth Circuit in *Dornier Aviation*, this Court should look to certain enumerated factors to determine whether the Court should recharacterize debt to equity. These factors include: (1) the names given to the instruments, if any, evidencing the indebtedness; (2) the presence or absence of a fixed maturity date and schedule of payments; (3) the presence or absence of a fixed rate of interest and interest payments; (4) the source of repayments; (5) the adequacy or

6

inadequacy of capitalization; (6) the identity of interest between the creditor and the stockholder; (7) the security, if any, for the advances; (8) the corporation's ability to obtain financing from outside lending institutions; (9) the extent to which the advances were subordinated to the claims of outside creditors; (10) the extent to which the advances were used to acquire capital assets; and (11) the presence or absence of a sinking fund to provide repayments. *Id.* at 233.

The first *Dornier Aviation* factor, which considers the names given to the instruments evidencing the indebtedness, supports a holding that the PEM Contribution is an equity contribution. The instrument evidencing the debt in this matter is the Settlement Agreement. The Settlement Agreement was signed by CLIPS, Howard A. Jacobson, Richard E. Wolf, Paragon, and the Debtor. Significantly, the Settlement Agreement explicitly stated that all terms, including that the transfer of the Debtor's Paragon Loan to PEM, are made "in settlement of the Loan." *Paragon Depo.*, Exh. 4, at Section 3.2(a). Richard Wolf was managing member of CLIPS, which was an entity involved along with the Debtor in the development of the Olde Liberty Club. *It is undisputed that PEM was never a party to this Settlement Agreement.* PEM preferred the Debtor's principals to negotiate the settlement. Stanley Jacobson requested that Howard Jacobson and Richard Wolfe negotiate the Settlement Agreement. *Stanley L. Jacobson Affidavit*, ¶14. Stanley Jacobson further requested that Howard Jacobson and Richard Wolfe not disclose to PEM and keep confidential that he was to be the driving force behind PEM's purchase of the Debtor's Paragon Loan. *Id* at ¶14. The Settlement Agreement, which by its terms allowed for the purchase of the Debtor's Paragon Loan, was executed only by equity owners of the Debtor, Howard Jacobson, and Richard E. Wolf.

In addition, this Court looks beyond the form or names given to the instrument evidencing the indebtedness to the substance of the transaction and its terms, as instructed by the court in

*Dornier Aviation*. 453 F.3d at 231. The terms of the Settlement Agreement stated that the agreement was made "in settlement of the Loan," which refers to the Debtor's Paragon Loan and deed of trust held by Paragon in the original amount of $6,465,000.00. As stated, PEM was not a party to the Settlement Agreement, and the focus of the Settlement Agreement was to settle the Debtor's Paragon Loan with the Debtor and its insider guarantors Richard Wolf and Howard Jacobson. This Settlement Agreement was not intended as an assignment of the Debtor's Paragon Loan to PEM. Even though PEM was not a signer to the Settlement Agreement, PEM, as a third party, purchased the $6,465,000.00 Debtor's Paragon Loan for $1,242,000.00. The additional monies acquired by PEM came from PEM's Paragon Loan in the amount of $292,000.00 and $650,000.00 loaned to PEM by Deglomini and Simone secured by the Deglomini-Simone Deed of Trust *on portions of the Debtor's Olde Liberty Club property. The Debtor's Paragon Loan was subordinated to the Deglomini-Simone Deed of Trust and the PEM Paragon Loan.* Monies to repay these loans owed to PEM came from money generated by the sales of the Debtor's Old Liberty Club real estate. *Paragon Depo.*, Exh. 4 at 4, Exh. 6; PEM Depo. Vol. 1 at 48:23-49:8.

In effect, Stanley Jacobson, Robert Conaty, and AIHL purchased the Debtor's Paragon Loan, consisting of a $6,465,000.00 note and deed of trust, for a true equity investment total of $300,000.00. The Debtor pledged sufficient collateral for PEM's Paragon Loan of $292,000.00, and the Deglomini and Simone loan of $650,000.00, but pledged nothing for the $300,000.00 truly invested by Stanley Jacobson, Richard Conaty, and AIHL.

The Debtor's Chapter 11 Plan, in the above captioned bankruptcy case, provided that the Debtor would surrender all property owned by the Debtor, except for 35 lots in Old Liberty Club, in exchange for a reduction in balance on the note held by PEM for the purchase of the Debtor's

8

Paragon Loan. This reduction would reduce the balance of the Debt for the purchase of the Debtor's Paragon Loan from $6,450,000.00 to $3,000,000.00. Therefore, when PEM, which is controlled by the Debtor's insiders, voted in favor of the Debtor's Chapter 11 Plan treatment of PEM, PEM received what amounted to an approximately 300% increase in real estate value on the Old Liberty Club property. The 300% increase in value occurred from the date of the execution of the Settlement Agreement of March 2, 2012, to the date of the filing of the original Chapter 11 Plan on June 10, 2013. After thorough examination of the substance and terms of the Settlement Agreement, the recharacterization of the debt in question to an equity contribution is supported by the first factor enumerated by *Dornier Aviation* as a matter of law.

    The second *Dornier Aviation* factor considers the presence or absence of a fixed maturity date and schedule of payments. The third *Dornier Aviation* factor considers the presence or absence of a fixed rate of interest and interest payments. The fourth *Dornier Aviation* factor considers the source of payments. The Debtor's Paragon Loan in the amount of $6,465,000.00 did have as its original terms a payment of $30,000.00 per year with all principal and interest due on or before February 28, 2017. However, after the Settlement Agreement was executed, there is absolutely no evidence that any new terms of payment or maturity were negotiated or put in writing by the Debtor and PEM. It is uncontroverted that all of the Debtor's revenue was received directly by PEM. *See PEM Depo*. Vol. 1 at 82:8-20. In spite of receiving all of the Debtor's revenue, PEM admitted that no ledger or accounting journal is maintained in regard to the $6,465,000.00 note. *PEM Depo*. Vol. 2 at 14:6-21,23:9-12. Further, Stanley Jacobson, the sole member of PEM had no knowledge of any terms of repayment of the $6,465,000.00 note for the purchase of the Debtor's Paragon Loan. *PEM Depo*. Vol. 1 at 81:17-23. PEM admitted that it expects no regular payments because Debtor has no

9

source for such payments. *PEM Depo.* Vol. 1 at 84:3-8. No evidence of a fixed maturity date was presented. No schedule of repayments of the principal balance nor evidence of interest or interest repayment was provided. These undisputed facts provide further evidence to this Court that a recharacterization is appropriate as a matter of law.

Particularly relevant in this matter is the fifth *Dornier Aviation* factor which examines the adequacy or inadequacy of capitalization. It is uncontroverted that the Debtor has no adequate capitalization. The only monies that the Debtor receives to operate are payments from PEM to the Debtor from the sale of the lots in the Old Liberty Club. See *PEM Depo.* Vol. 2, Exh 17. As evidenced by PEM's admission mentioned above, the Debtor has no source with which to make payments on its debts. Further, the Debtor's monthly operating reports show the Debtor holds no cash and relies on capital contributions from members to pay the Debtor's quarterly fees. In 2011, with the foreclosure of the Debtor's Paragon Debt nearing, Howard Jacobson and Richard Wolf approached Stanley Jacobson in an effort to solicit additional capital contributions. *Stanley Jacobson Affidavit* ¶ 4, *Richard E. Wolf Affidavit*, ¶44, *Howard Jacobson Affidavit*, ¶10. Those efforts to have members of the Debtor contribute additional capital were unsuccessful. Instead of making an additional capital contribution to pay off the Debtor's Paragon Loan at the discounted amount, Stanley Jacobson began his efforts to purchase the note and deed of trust for the Debtor's Paragon Loan. Rather than continuing to solicit capital contributions for the Debtor or solicit other potential investors, Stanley Jacobson focused his efforts on soliciting capital contributions for participation in a new entity, PEM. *Howard Jacobson Affidavit*, ¶24; *Stanley L. Jacobson Affidavit*, ¶18. After the capital contributions were solicited for PEM, Stanley Jacobson directed PEM to purchase the note from Paragon for the Debtor's Paragon Loan. The Debtor did not have enough capital to prevent

foreclosure and could not raise adequate capital contributions from its members. An application of the fifth *Dornier Aviation* factor further supports recharacterization of this debt to equity as the under capitalization of the Debtor is evident as a matter of law.

The formation of PEM and its members for the purposes of purchasing the Debtor's Paragon Loan is examined in an application of the sixth *Dornier Aviation* factor. This factor scrutinizes the identity of interest between the creditor and stockholders. All but one of the current members of PEM are members who were added as a result of the capital contributions are insiders of the Debtor pursuant to 11 U.S.C. § 101(31). The members of PEM who are also insiders of the Debtor are: Stanley and Rhoda Jacobson, Robert B. Conaty, A&M, LLC, Ron Serbin, and Howard Jacobson. *See Debtor's Petition; Responses of PEM Entities, LLC to Plaintiffs' First Set of Interrogatories* at 6. Further, during the negotiation of the Settlement Agreement, Paragon's representatives dealt solely with principals of the Debtor, Howard Jacobson and Richard Wolf. *PEM Depo*. Vol. 1 at 52:1-3. An examination of the identity of interest in the creditor and stockholder relationship supports the holding of the Court that the $300,000.00 debt should be recharacterized as equity as a matter of law.

The seventh *Dornier Aviation* factor seeks discovery of the security, if any, for advances made. It is undisputed that any and all advances made by PEM to the Debtor, continue to be secured by the note and deed of trust assigned to PEM by Paragon pursuant to the Settlement Agreement. Most significant are the contributions of capital being made by PEM to the Debtor to fund operating expenses. This Court holds that contributions of capital for operating expenses should not receive preferential treatment above other creditors and therefore recharacterization of this debt to equity is proper as a matter of law.

The corporation's ability to obtain financing from outside lending institutions is taken into consideration by the eighth *Dornier Aviation* factor. No evidence was presented to this Court that the Debtor had any ability to obtain financing from outside lending institutions. This inability to obtain financing may have been caused by two foreclosure proceedings initiated by Paragon and a very depressed real estate market. Nonetheless, it is undisputed that the Debtor could not obtain financing and therefore recharacterization of the $300,000.00 from debt to equity is appropriate as a matter of law.

*Dornier Aviation* factor nine and ten pertain to the advances made to the Debtor. The ninth factor regards the extent to which the advances were subordinated to the claims of outside creditors. In this case, there is absolutely no evidence presented to the Court that the $300,000.00 PEM Contribution by Stanley Jacobson, Robert Conaty and AIHL trust were subordinated to other creditors. To the contrary, PEM maintained a first lien on the real property of Olde Liberty Club by virtue of the note and deed of trust assigned to PEM from Paragon for Debtor's loan. In addition, the tenth *Dornier Aviation* factor considers the extent to which the advances were used to acquire capital assets. In this case, there is no evidence that the $300,000.00 PEM Contribution was used by the Debtor to purchase additional capital assets, but was rather used to settle the Debtor's Paragon Loan that was in default with Paragon for a deep discount. Accordingly, the ninth and tenth factors regarding advances made to the Debtor supports the Court's holding that a recharacterization of the debt to equity is appropriate.

The final factor examined by the court in *Dornier Aviation* discerns whether there is a presence or absence of a sinking fund to provide repayments for the debt in question. In the present matter, no evidence was presented nor mention made of a sinking fund to fund repayments by the

Debtor to PEM for the purchase of the Debtor's Paragon Loan. The absence of a sinking fund gives rise to support the fact the Debtor was undercapitalized and had no set terms of repayment. Such uncontroverted facts support a holding that the $300,000.00 PEM Contribution was an equity infusion by equity members of the Debtor rather than a loan to be repaid by the Debtor to PEM.

Counsel for PEM argued that this transaction was nothing more than insider owners of the Debtor trying to salvage the property from foreclosure by purchasing the note of the Debtor's Paragon Loan that was in default. The Court in *Dornier Aviation* found it important to note that, "a claimant's insider status and a debtor's undercapitalization alone will normally be insufficient to support the recharacterization of a claim." As in the present matter, however, the court stated, "when other factors indicate that the transaction is not a loan at all, recharacterization is appropriate." *In re Official Committee of Unsecured Creditors for Dornier Aviation(North America), Inc.*, 453 F.3d 225, 234(4th Cir.2006).

All of the factors in *Dornier Aviation* support a holding of recharacterization of the debt as an equity contribution. The transaction as a whole was more consistent with an equity contribution than that of a loan from a creditor. PEM was NOT a party or signer of the Settlement Agreement with Paragon which required it to hold the Debtor's Paragon Loan. Further, PEM, through Stanley Jacobson and Robert Conaty, did not make a separate loan to the Debtor. Instead, the purchase of the Debtor's Paragon Loan was negotiated as opposed to having the note for the Debtor's Paragon Loan marked paid and satisfied. Had either of the them desired to make a loan to the Debtor, Stanley Jacobson, and Robert Conaty could have contributed money to the Debtor without the need for PEM. To adjust for these capital contributions, they could have adjusted the capital accounts. Instead, Stanley Jacobson and Robert Conaty chose to negotiate the purchase of the Debtor's Paragon Loan

in the form of a $6,465,000.00 note for the purchase price of $1,242,000.00. In effect, Stanley Jacobson, Robert Conaty, and AIHL purchased a $6,465,000.00 note and deed of trust for the Debtor's Paragon Loan for a true equity investment total $300,000.00. The Debtor pledged sufficient collateral for the PEM's Paragon Loan, and the Deglomini-Simone Loan, but pledged nothing for the $300,000.00 PEM Contribution. The result of this transaction was that PEM and its owners would have the opportunity of realizing a 300% a return on their investment over a period of less than two years. Further, PEM would have a controlling vote in the confirmation of the Debtor's Chapter 11 Plan. In accordance with the factors enumerated in *Dornier Aviation*, this Court holds that the PEM Contribution in the purchase of the Debtor's Paragon Loan in the amount of $300,000.00 is an equity contribution and is therefore recharacterized as such.

The Debtor used PEM as an extension of itself, used its property to secure PEM's debt and used money collected by PEM for payment on the Paragon Loan for the Debtor's ordinary business expenses. The Debtor, through Richard Wolf and Howard Jacobson, negotiated the satisfaction of the Debtor's Paragon Loan, and the $300,000.00 PEM Contribution for the purchase of the Debtor's Paragon Loan. These actions are, as a matter of law, an equity contribution made to keep the Debtor from losing its sole asset in foreclosure. Accordingly, this special relationship between PEM and the Debtor as well as PEM's interest in the Debtor's survival, support finding that the alleged debt was in fact an equity contribution. There are no genuine issues of material fact with regard to Plaintiffs' claim that the $300,000.00 PEM Contribution was an equity contribution to the Debtor. Plaintiff is entitled to judgment against the Defendants to recharacterize the $300,000.00 portion of the $1,242,000.00 as equity. The $7,000,000.00 claim of PEM is void.

14

As to the Plaintiffs' standing to bring this adversary proceeding, this court ordered that the adversary proceeding, "*Bolton, et. al., vs Jacobson, et. al.*  A. P. No. 13-00046-8-ATS, be heard by the North Carolina Business Court by virtue of that certain order entered on May 17, 2013, requiring mandatory abstention of the Bankruptcy Court from hearing that case. Whether or not the Plaintiffs are entitled to a claim in the Debtor's case and to the relief set forth in this Order Granting Summary Judgment, will be determined in the trial of "*Bolton, et. al., vs Jacobson, et. al.*" in the North Carolina Business Court. Therefore, whether or not the Plaintiffs are entitled to the benefit of the $300,000.00 PEM Contribution being recharacterized as equity, depends on the outcome of this state business court litigation.[1]

## II. No Grounds Exist for the Equitable Subordination of PEM's Claim in the Debtor's Bankruptcy Proceeding to that of the Plaintiffs.

In addition to the claim for recharacterization of the debt, the Plaintiffs allege that PEM's claim in the Debtor's bankruptcy proceeding should be equitably subordinated to that of the Plaintiffs. The Plaintiffs alleged that PEM engaged in inequitable conduct stating that PEM's purchase of the Debtor's Paragon Loan was not an arm's length transaction as PEM was an insider of the Debtor pursuant to 11 U.S.C. § 101(31). Further, the Plaintiffs contended that the purchase of the Debtor's Paragon Loan was structured in a way to prevent distribution of the assets of the Debtor's bankruptcy estate to legitimate creditors.

It is well established that "[t]he courts of bankruptcy are courts of equity and exercise all equitable powers unless prohibited by the Bankruptcy Act." *In re FCX, Inc.*, 60 B.R. 405, 409 (E.D.N.C.

---

[1] Hearings on the Debtor's pending Objection to Claim Number 5 of Eric of Levin and Objection to Claim Number 6 of Howard Shareff have been continued until North Carolina Business Court litigation in *Bolton, et. al., vs Jacobson, et. al.*  A. P. No. 13-00046-8-ATS is resolved.

1986) (quoting *Young v. Higbee Co.*, 324 U.S. 204 (1945)). Pursuant to these equitable powers, "the bankruptcy court has the power to shift the circumstances surrounding any claim to see that injustice or unfairness is not done in administration of the bankrupt estate." *Id.* (quoting *Pepper v. Litton*, 308 U.S. 295 (1939)). "Therefore, the bankruptcy court has the ability to deviate from the rules of priority and distribution set forth in the Code in the interest of justice and equity." *Id*.

Section 510 of the united states the Code provides that:

> [A]fter notice and a hearing, the court may--
> (1) under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim or all or part of an allowed interest to all or part of another allowed interest; or
> (2) order that any lien securing such a subordinated claim be transferred to the estate.
>
> 11 U.S.C. § 510©.

The Bankruptcy Court may only equitably subordinate a claim, absent Congressional authorization, because of the fraudulent nature of a claim or bad faith or improper conduct of a claimant. *In re FCX, Inc.,* 60 B.R. 405, 410 (E.D.N.C. 1986*); In re Westgate-California Corp.,* 642 F.2d 1174, 1177-1178 (9th Cir. 1981)*; In re Columbia Ribbon Company,* 117 F.2d 999, 1002 (3d Cir.1941*); See also* 11 U.S.C. § 510©. The fundamental aim of equitable subordination "is to undo or to offset any inequity in the claim position of a creditor that will produce injustice or unfairness to other creditors in terms of the bankruptcy results." *In re Kansas City Journal-Post Co.*, 144 F.2d 791, 800 (8th Cir.1944), quoted *In re Westgate-California Corp.*, 642 F.2d at 1177. Therefore, "a claim will not be subordinated unless it is shown that the claimant has acted inequitably in the course of his relationship with the debtor and that those actions have harmed the debtor or his other creditors in some way." *In re Westgage-California Corp.,* 642 F.2d at 1178; quoting *In re Ahlswede*,

16

516 F.2d 784, 788 (9th Cir. 1975). Pursuant to the undisputed facts presented to the Court, there is insufficient evidence from which this Court could find there was misconduct or inequitable conduct on the part of PEM. There is no evidence that the negotiation with Paragon for the settlement of the $6,465,000.00 Debtor's Paragon Loan was anything but an arms length transaction between the Debtor's insiders and Paragon, for the benefit of PEM. According to his affidavit, Stanley Jacobson believed the Olde Liberty Club property to have a value of no more than $1,200,000.00. *Stanley Jacobson Affidavit*, ¶11. The Settlement Agreement provided that PEM, at the direction of Stanley Jacobson, would purchase the Debtor's Paragon Loan for $1,242,000.00 which would have been a fair price according to Stanley Jacobson's estimation. The negotiations for PEM's purchase of the Debtor's Paragon Loan occurred in the aftermath of the worst recession in real estate in 2008. Further, the Olde Liberty Club property had twice been subjected to foreclosure proceedings by Paragon.

The Court's holding that PEM's contribution should be recharacterized from a debt to an equity contribution has no bearing on the determination of whether equitable subordination is appropriate. *Dornier Aviation*, 453 F.3d at 232. The court in *Dornier Aviation* explains that a "bankruptcy court's recharacterization decision rests on the *substance of the transaction* . . . its equitable subordination decision rests on its assessment of the *creditor's behavior*." *Id*. This Court holds that there has been no factual evidence that rises to the level of misconduct or inequitable conduct as a matter of law. The Court holds that an equitable subordination of PEM'S claim is not appropriate. Therefore, summary judgment is granted in favor of the Defendants.

### III. The Plaintiffs Lack Standing to Assert or Recover Damages for a Claim of Fraudulent Transfer.

Lastly, the Plaintiffs argue that they are entitled to summary judgment with regard to the claim that the Debtor engaged in fraudulent transfers. The Plaintiffs allege that the Debtor transferred $202,087.71 to PEM on account of the debt for the PEM's Paragon Loan three months prior to the Debtor's filing its petition for relief under Chapter 11 of the Code. The Plaintiffs also ask that this Court set aside or mark as satisfied the deeds of the First Deed of Trust of Paragon purchased by PEM and the Deglomini Deeds of Trust as they were results of the fraudulent transfer.

This Court has held that, "once a bankruptcy case is filed, all fraudulent transfer claims relating to a transfer made by the debtor, and the rights to recover damages or to avoid liens in connection with such claims, are property of the estate." *In re Midsouth Golf, LLC. (Fairfield Harbour Property Owners Association, Inc. v. Midsouth Golf, LLC et al.*) AP No: 14-00012-8-RDD at 3 (Bankr. E.D.N.C. Nov. 20, 2014) (quoting *In re Ontos, Inc.* (*Morley v. Ontos, Inc., et al*), 478 F.3d 427, 431-32 (1st Cir. 2007)). The Fourth Circuit held that fraudulent conveyance actions are property of the estate which vest in the debtor in possession or trustee such that an individual creditor lacks standing to pursue such a claim. *Nation American Ins. Co. v. Ruppert Landscaping Co., Inc.*, 187 F.3d 439 (4th Cir. 1999); *Steyr-Daimler-Puch of America Corp. v. Pappas*, 852 F.2d 132 (4th Cir. 1988); See *Poth v. Russey*, 99 Fed. Appx. 446 (4th Cir. 2004). The Bankruptcy Court in *Ivester v. Miller* also held, and the District Court affirmed, that individual creditors lack standing to pursue state law fraudulent transfer actions and that these cases should be dismissed, on the grounds that the actions are property of the estate. *Ivester v. Miller*, 398 BR. 408, 429-430 (M.D.N.C. 2008). Therefore, the Court holds that the Plaintiffs, as individual creditors, lack standing to pursue the

18

claim for recovery of a fraudulent transfer. This cause of action lies solely with the Trustee or Debtor in Possession, not with individual creditors. Further, the Court refuses to set aside the valid First Deed of Trust securing PEM's Paragon loan and the Deglomini-Simone deeds of trust. These parties are not named defendants in the adversary proceeding. Therefore, summary judgment is granted in favor of the Defendants.

## CONCLUSION

As to the Plaintiffs' motion for summary judgment requesting that the $300,000 PEM contribution be recharacterized as an equity contribution by Stanley Jacobson, Richard B. Conaty, and AIHL, summary judgement for Plaintiffs is **GRANTED**.

As to the Plaintiffs' claim that the PEM Contribution should be equitably subordinated to that of the Plaintiffs the Court holds that there was not sufficient evidence of misconduct or inequitable conduct on the part of the Defendants, as a matter of law. Therefore, summary judgment is **DENIED** for Plaintiffs but **GRANTED** for Defendants. Further, Plaintiffs' claim with regard to equitable subordination is **DISMISSED** with prejudice.

As to Plaintiffs claim for relief to recover for the alleged fraudulent transfers made by the Debtor for the benefit of PEM, the Plaintiffs do not have standing to bring an action for fraudulent transfers under 11 U.S.C. §§544, 548. Therefore, summary judgment is **DENIED** and the Plaintiffs' claim for relief is **DISMISSED** with prejudice.

As to Plaintiffs' request that this Court set aside the Paragon First Deed of Trust and the Deglomini-Simone Deed of Trust, the Court holds that the aforementioned deeds of trust are valid deeds of trust. Further, Paragon, Deglomini, and Simone are not party defendants to this action.

Therefore, summary judgment is **DENIED** and the Plaintiffs' claim for relief is **DISMISSED** with prejudice.

Finally, as to the Plaintiffs' prayer for relief that this Court award Plaintiffs' their costs and reasonable attorneys' fees, this Court finds no basis for such an award. The Plaintiffs and Defendant will each be taxed with their respective fees and costs.

**SO ORDERED.**

**END OF DOCUMENT**