IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:14-CV-889-D

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| PROVINCE GRANDE OLDE | ) | |
| LIBERTY, LLC, et al., | ) | |
| | ) | |
| | ) | |
| PEM ENTITIES LLC, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| ERIC M. LEVIN, and | ) | |
| HOWARD SHAREFF, | ) | |
| | ) | |
| Appellees. | ) | |

In this appeal from the United States Bankruptcy Court for the Eastern District of North Carolina, PEM Entities, LLC ("PEM" or "appellant") contends that the bankruptcy court erred in granting summary judgment to Eric M. Levin and Howard Shareff ("appellees"). Essentially, PEM contends that the bankruptcy court erroneously applied In re Official Committee of Unsecured Creditors for Dornier Aviation (North America), Inc., 453 F.3d 225 (4th Cir. 2006), in recharacterizing PEM's debt as equity. As explained below, the court affirms the bankruptcy court's judgment.

I.

Because the underlying motion for summary judgment involved a core matter, the bankruptcy court possessed the constitutional authority to enter a final judgment on the motion, and this court has jurisdiction over the appeal. See, e.g., 28 U.S.C. § 158(a); Exec. Benefits Ins. Agency v.

Arkison, 134 S. Ct. 2165, 2170–75 (2014); Stern v. Marshall, 131 S. Ct. 2594, 2619–20 (2011). The parties also consented to the bankruptcy court's resolution of their dispute. See Wellness Int'l Network, Ltd. v. Sharif, No. 13-935, 2015 WL 2456619, at *9, *13 (U.S. May 26, 2015).

This court reviews a bankruptcy court's conclusions of law de novo and reviews its findings of fact for clear error. See, e.g., Sartin v. Macik, 535 F.3d 284, 287 (4th Cir. 2008); In re White, 487 F.3d 199, 204 (4th Cir. 2007); In re Duncan, 448 F.3d 725, 728 (4th Cir. 2006). The court reviews de novo an order granting a motion for summary judgment. See, e.g., Scott v. Harris, 550 U.S. 372, 378–80 (2007); Celotex Corp. v. Catrett, 477 U.S. 317, 322–24 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585–87 (1986); Nader v. Blair, 549 F.3d 953, 958 (4th Cir. 2008).

Eric Levin and Howard Shareff invested $1,000,000 in Lakebound Fixed Return Fund, LLC ("Lakebound"). See Levin Decl. [D.E. 13-11] ¶¶ 3–5; Shareff Decl. [D.E. 13-12] ¶¶ 3–7. Lakebound was supposed to invest in real estate and provide a fixed return to its investors. Lakebound did not perform as expected, and individuals and entities associated with Lakebound (including Levin and Shareff) are litigating in North Carolina Business Court. Two defendants in the state-court action are CILP Acquisition, LLC ("CILP") and Province Grande Olde Liberty, LLC ("Province Grande"). Province Grande also is the debtor in the underlying Chapter 11 bankruptcy in this court. See Chapter 11 Voluntary Petition, In re Providence Grande Olde Liberty, LLC, 13-1563-8-SWH (Bankr. E.D.N.C. Mar. 11, 2013), [D.E. 1].

Levin and Shareff allege that Province Grande misappropriated $188,000 from Lakebound in order to close Province Grande's 2009 purchase of certain land out of a foreclosure sale. See [D.E. 12-2] ¶¶ 18–20, 24; Levin Decl. [D.E. 13-11] ¶¶ 7–8; Shareff Decl. [D.E. 13-12] ¶¶ 8–9. Province Grande admits receiving the $188,000, but contends that Lakebound lent it those funds.

2

[D.E. 13-1] ¶ 24. Levin and Shareff respond that the alleged loan from Lakebound to Province Grande violated Lakebound's Operating Agreement, that no documentation supports Province Grande's contention concerning a loan, and that Province Grande converted the $188,000. See [D.E. 12-2] ¶¶ 24–26; Levin Decl. [D.E. 13-11] ¶¶ 4–8; Levin Decl., Ex. A [D.E. 13-11] 3–34; Shareff Decl. [D.E. 13-12] ¶¶ 5–9. Notably, the bankruptcy court found that Province Grande used that $188,000, plus a $6,465,000 loan from Paragon Commercial Bank ("Paragon") secured by a deed of trust, to purchase the land out of foreclosure. See [D.E. 1-2] 3; PEM 30(b)(6) Dep. [D.E. 13-7] 15; [D.E. 13-6] 1; cf. [D.E. 13-13] 167.

The dispute at issue in this appeal concerns the settlement of Province Grande's $6,465,000 debt to Paragon. Specifically, in late 2011, Paragon began foreclosure proceedings against Province Grande. In addition, Paragon sought to recover from Howard Jacobson and Richard Wolf, who had personally guaranteed the $6,465,000 loan. See [D.E. 12-2] ¶¶ 30–33; [D.E. 13-1] ¶¶ 30–33. On March 2, 2012, Province Grande, Jacobson, Wolf, CILP, and Paragon entered into a settlement agreement resolving the $6,465,000 debt and resolving a loan from Paragon to CILP that secured other portions of the land. See Paragon 30(b)(6) Dep. [D.E. 13-5] 20; [D.E. 13-6] 22–45 ("Settlement Agreement").

PEM is a Delaware limited liability company that Stanley Jacobson, Howard Jacobson's father, and Eric Martins formed on December 6, 2011. See PEM 30(b)(6) Dep. [D.E. 13-7] 35–36, 52. Stanley Jacobson is an "insider" of Province Grande under 11 U.S.C. § 101(31). [D.E. 20] 7; [D.E. 13-8] 13.[1] According to Levin and Shareff, Stanley Jacobson ostensibly created PEM to

---

[1] 11 U.S.C. § 101(31) states:

The term "insider" includes–
(A) if the debtor is an individual–

3

acquire the $6,450,000 bank notes from Paragon, but Jacobson really created PEM to strip equity from Province Grande and prevent payment to Levin and Shareff, who are Province Grande creditors. In support of their argument, Levin and Shareff note that PEM is not a party to the Settlement Agreement. Nevertheless, PEM agreed to purchase the Paragon loan of approximately

---

        (i) relative of the debtor or of a general partner of the debtor;
        (ii) partnership in which the debtor is a general partner;
        (iii) general partner of the debtor; or
        (iv) corporation of which the debtor is a director, officer, or person in control;

    (B) if the debtor is a corporation–

        (i) director of the debtor;
        (ii) officer of the debtor;
        (iii) person in control of the debtor;
        (iv) partnership in which the debtor is a general partner;
        (v) general partner of the debtor; or
        (vi) relative of a general partner, director, officer, or person in control of the debtor;

    (C) if the debtor is a partnership–

        (i) general partner in the debtor;
        (ii) relative of a general partner in, general partner of, or person in control of the debtor;
        (iii) partnership in which the debtor is a general partner;
        (iv) general partner of the debtor; or
        (v) person in control of the debtor;

    (D) if the debtor is a municipality, elected official of the debtor or relative of an elected official of the debtor;
    (E) affiliate, or insider of an affiliate as if such affiliate were the debtor; and
    (F) managing agent of the debtor.

11 U.S.C. § 101(31).

$6,465,000 for the steeply discounted price of $1,242,000. See [D.E. 13-6] 25. Moreover, Paragon negotiated this purchase with Howard Jacobson and Wolf, and never met or negotiated with any PEM representatives. See PEM 30(b)(6) Dep. [D.E. 13-7] 52; Paragon 30(b)(6) Dep. [D.E. 13-5] 36–37.

In order to fund the $1,242,000 purchase, Province Grande pledged two deeds of trust against its land for PEM's benefit. The first deed of trust for $292,000 secured a zero-percent loan from Paragon to PEM that PEM, in turn, used to finance PEM's discounted purchase of the Paragon loan. See [D.E. 13-6] 25, 46. Province Grande also executed a second deed of trust, pledging other property to secure a $650,000 loan that PEM, in turn, used to purchase the Paragon debt. See Paragon 30(b)(6) Dep. [D.E. 13-5] 49; PEM 30(b)(6) Dep. [D.E. 13-7] 80; [D.E. 13-6] 55. PEM contributed the remaining $300,000 to fund the purchase of the Paragon debt, and it is this contribution that Levin and Shareff seek to have recharacterized as equity. [D.E. 1-2] 6.

On March 11, 2013, Province Grande filed its bankruptcy petition. See Chapter 11 Voluntary Petition, In re Providence Grande Olde Liberty, LLC, 13-1563-8-SWH (Bankr. E.D.N.C. Mar. 11, 2013), [D.E. 1]. Province Grande listed PEM's claim as a secured claim of $7,000,000. See id. at 5; Amended Schedules at 1, 4, In re Providence Grande Olde Liberty, LLC, 13-1563-8-SWH (Bankr. E.D.N.C. May 17, 2013), [D.E. 72-1]. Province Grande listed Levin and Shareff as creditors with unknown and disputed claims. Chapter 11 Voluntary Petition at 4–5, In re Providence Grande Olde Liberty, LLC, 13-1563-8-SWH (Bankr. E.D.N.C. Mar. 11, 2013), [D.E. 1].

The bankruptcy court had to decide, inter alia, how to analyze the Paragon loan and the relationship between Province Grande and PEM. The bankruptcy court examined PEM's "acquisition" of the $6,450,000 Paragon loan for $1,242,000. The bankruptcy court focused on whether the acquisition, in substance, was Province Grande's satisfaction of the notes to Paragon.

Tellingly, an insider of Province Grande formed PEM, and PEM funded three quarters of the purchase price with loans that Province Grande's property secured. Moreover, Province Grande's principals (not PEM's principals) negotiated the transaction with Paragon as part of a settlement agreement involving Province Grande and Paragon. See [D.E. 1-2] 7.

The bankruptcy court thoroughly analyzed the eleven factors described in Dornier Aviation in deciding whether to recharacterize PEM's $7,000,000 claim. See id. 6–14.[2] The bankruptcy court concluded that it could recharacterize PEM's $300,000 contribution towards the $1,242,000 settlement as an equity contribution that allowed Province Grande to satisfy its debt to Paragon. See id. 13–14.

This court has reviewed the record and the relevant cases and concludes that the bankruptcy court acted within its discretion under Dornier Aviation. See Dornier Aviation, 453 F.3d at 231–33. Furthermore, the court agrees with Levin and Shareff that the bankruptcy court's conclusions are correct.

II.

In sum, the judgment of the bankruptcy court is AFFIRMED.

---

[2] A bankruptcy court may consider the following factors in determining whether to recharacterize a claim:

> (1) the names given to the instruments, if any, evidencing the indebtedness; (2) the presence or absence of a fixed maturity date and schedule of payments; (3) the presence or absence of a fixed rate of interest and interest payments; (4) the source of repayments; (5) the adequacy or inadequacy of capitalization; (6) the identity of interest between the creditor and the stockholder; (7) the security, if any, for the advances; (8) the corporation's ability to obtain financing from outside lending institutions; (9) the extent to which the advances were subordinated to the claims of outside creditors; (10) the extent to which the advances were used to acquire capital assets; and (11) the presence or absence of a sinking fund to provide repayments.

Dornier Aviation, 453 F.3d at 233.

SO ORDERED. This __1__ day of June 2015.

                                              JAMES C. DEVER III
                                              Chief United States District Judge