UNPUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

No. 15-1669

---

In Re: PROVINCE GRANDE OLDE LIBERTY, LLC, a/k/a Silver
Deer Olde Liberty AA Lots, LLC,

                    Debtor.

------------------------------

PEM ENTITIES LLC,

                    Appellant,

          v.

PROVINCE GRANDE OLDE LIBERTY, LLC,

                    Defendant,

          and

ERIC M. LEVIN; HOWARD SHAREFF,

                    Creditors - Appellees.

---

Appeal from the United States District Court for the Eastern
District of North Carolina, at Raleigh.  James C. Dever III,
Chief District Judge.  (5:14-cv-00889-D; 8:13-01563; 8:13-00122)

---

Argued:  May 10, 2016            Decided:  August 12, 2016

---

Before GREGORY, Chief Judge, TRAXLER, Circuit Judge, and Joseph
F. ANDERSON, Jr., Senior United States District Judge for the
District of South Carolina, sitting by designation.

---

Affirmed by unpublished per curiam opinion.

---

**ARGUED**: John Arlington Northen, NORTHEN BLUE, LLP, Chapel Hill, North Carolina, for Appellant.  James C. White, LAW OFFICE OF JAMES C. WHITE, P.C., Chapel Hill, North Carolina, for Appellees.  **ON BRIEF**: Vicki L. Parrott, John Paul H. Cournoyer, NORTHEN BLUE, LLP, Chapel Hill, North Carolina, for Appellant. Michelle M. Walker, LAW OFFICE OF JAMES C. WHITE, P.C., Chapel Hill, North Carolina, for Appellees.

---

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

PEM Entities, LLC ("PEM") appeals the district court's order affirming the bankruptcy court's grant of summary judgment in favor of Eric M. Levin and Howard Shareff ("Appellees"). Specifically, PEM contests the bankruptcy court's recharacterization of certain debt into equity. For the following reasons, we affirm the decision of the district court.

I.

This case arises out of several North Carolina real estate investments involving Howard Jacobsen ("Howard"). Lakebound Fixed Return Fund, LLC ("Lakebound") is a company formed to invest in real estate and provide a fixed, high-yield return to its investors. Lakebound is managed by Howard. Appellees invested $500,000.00 each into Lakebound. Province Grande Olde Liberty, LLC ("Debtor") is an entity formed by Howard for the purpose of acquiring the Olde Liberty Golf and Country Club ("Golf Club"), a golf and residential real estate development in Franklin County, North Carolina. Debtor's membership included Howard, his parents—Stanley and Rhonda Jacobsen—and Robert B. Conaty.

To finance the acquisition of the Golf Club, Debtor obtained $188,000.00 from Lakebound and borrowed $6,465,000.00 from Paragon Commercial Bank ("Paragon"). The transfer of $188,000.00 from Lakebound to Debtor is the subject of ongoing

3

litigation in North Carolina state court and provides a basis for Appellees claims in the underlying bankruptcy proceeding. Specifically, Appellees contend that this transfer was a misappropriation of Lakebound's funds. The $6,465,000.00 loan from Paragon was an arms-length transaction evidenced by a promissory note and secured by a deed of trust on the Golf Club property.

In 2010, Debtor defaulted on the Paragon loan. The following year, Paragon initiated foreclosure proceedings on the real estate security. In an effort to resolve the loans to Debtor and other entities, Howard, Debtor, and several other related entities entered into a settlement agreement with Paragon. Under that agreement, Paragon agreed to sell its $6,465,000.00 loan to a new company, PEM, for the discounted price of $1,242,000.00. PEM is a Delaware company, owned by Stanley Jacobsen – Howard's father, Robert B. Conaty, and an entity owned by trusts established by Stanley Jacobsen for the benefit of his grandchildren ("the Trust").

Importantly, PEM's members did not negotiate the settlement agreement. Rather, Debtor's principals, including Howard Jacobsen, negotiated the agreement that purported to be "in settlement of the Loan." Paragon understood that Debtor's principals had the authority to bind PEM. Further, the settlement agreement bound Paragon to sell the loan to PEM for a

4

fixed price and even included an outline of the financing of the loan's purchase. PEM, however, was not a signor of the settlement agreement.

To fund the loan purchase provision of the settlement agreement, PEM used both equity contributions from its members as well as outside debt. Stanley Jacobsen contributed $130,000.00, Conaty contributed $100,000.00, and the Trust contributed $70,000.00. Together, these three contributions totaled $300,000.00.

PEM relied on financing to assemble the remainder of purchase price. Two individuals, Joseph Deglomini and Joseph Simone (collectively "D&S"), loaned PEM $650,000.00. Additionally, Paragon agreed to loan PEM the final $292,000.00, interest free, needed to complete the settlement. Both loans were secured by Golf Club real estate owned not by PEM, but by Debtor. Finally, PEM agreed to subordinate its position in the security to the loans from both D&S and Paragon.

After the completion of the settlement agreement, Debtor sold some of its property for $462,146.15. From those funds, Debtor paid $240,120.00 directly to Paragon and D&S in partial payment of the loans those entities made to PEM. Debtor transferred $202,087.71 to PEM. Shortly thereafter, PEM "re-advanced" $50,000.00 to Debtor for miscellaneous operating expenses. At no time did PEM or Debtor maintain any ledger or

5

account of the Paragon loan. Several other cash transfers went between Debtor and PEM and Howard sometimes called "loans" and other times "readvances."

Debtor filed its bankruptcy petition on March 11, 2013. In that filing, it listed PEM's claim at $7,000,000, including the principal from the Paragon loan and accrued interest. Additionally, it listed Appellees as creditors with unknown and disputed claims. Appellees filed claims in the Debtor's bankruptcy proceeding in the amount of $500,000.00 each. They made claims for equitable subordination and recharacterization and also statutory claims for avoidance and recovery of allegedly fraudulent transfers. The parties moved for summary judgment on all claims.

The bankruptcy court granted summary judgment in favor of Appellees on their equitable claim of recharacterization. Specifically, the bankruptcy court concluded that the PEM's loan purchase was, in effect, a settlement and satisfaction of the Paragon loan. The court recharacterized the $300,000.00 portion of the $1,242,000.00 paid by PEM pursuant to the settlement agreement from a debt owed it by Debtor into an equity investment in Debtor. Thus, the court rendered PEM's $7,000,000.00 claim void.

PEM appealed the bankruptcy court's order to the United States District Court for the Eastern District of North

6

Carolina. In its *de novo* review, the district court found the bankruptcy court correctly applied the law and affirmed its judgment. PEM timely filed its Notice of Appeal to this Court.

## II.

### A.

Recharacterization is well within the broad powers afforded a bankruptcy court. In re: Official Committee of Unsecured Creditors for Dornier Aviation (North America), Inc., 453 F.3d 225 (2006). The Bankruptcy Code establishes a scheme in which contributions to capital receive a lower priority than loans because their nature is that of a fund contributed to meet the obligations of a business and which should be repaid only after all other obligations have been satisfied. Id. at 231. Thus, adjudication under the Bankruptcy Code often requires a determination of whether a particular obligation is debt or equity. Id. When that question is in dispute, the bankruptcy court must make this determination in order to effectuate the priority scheme. Id.

In determining whether or not to recharacterize a claim, a bankruptcy court should apply the eleven factors adopted by this Court in Dornier:

> (1) the names given to the instruments, if any, evidencing the indebtedness; (2) the presence or absence of a fixed maturity date and schedule of payments; (3) the presence or absence of a fixed rate of interest and interest payments; (4) the source of

7

repayments; (5) the adequacy or inadequacy of capitalization; (6) the identity of interest between the creditor and the stockholder; (7) the security, if any, for the advances; (8) the corporation's ability to obtain financing from outside lending institutions; (9) the extent to which the advances were subordinated to the claims of outside creditors; (10) the extent to which the advances were used to acquire capital assets; and (11) the presence or absence of a sinking fund to provide repayments.

Id. at 233 (quoting Bayer Corp. v. Masco Tech, Inc. (In re AutoStyle Plastics, Inc.), 269 F.3d 726, 747-48 (6th Cir. 2001)). None of these eleven factors are themselves dipositive. Id. at 234. Rather, their significance varies depending upon the circumstance. Id.

                              B.

     In this case, the bankruptcy court weighed each of the Dornier factors in analyzing the settlement agreement. The court found that all of them weighed in favor of recharacterization. The court emphasized several facts in drawing its conclusion: (1) the naming of the settlement agreement and the fact that it was entered into "in settlement of the loan"; (2) the fact that Debtor's principals negotiated the settlement agreement and note purchase on behalf of PEM; (3) the failure of both Debtor and PEM to observe any formalities such as payment schedules, actual interest payments or even a ledger; (4) Debtor's total reliance on money from PEM to meet expenses and its inability to obtain any other financing; (5) the identity of interests between

                               8

Debtor and PEM; and (6) that approximately $900,000.00 of the $1,242,000.00 was funded by the pledge of security owned by Debtor. These facts adequately support the bankruptcy court's decision.

PEM contends that the bankruptcy court misapplied the Dornier factors by applying them to the wrong transaction. PEM argues that the bankruptcy court should have limited its analysis to the inception of the Paragon debt rather than to the later settlement agreement. Thus, according to PEM, we should apply the Dornier factors to the situation at the time Paragon made the loan to Debtor. We find this argument unpersuasive.

The bankruptcy court's broad recharacterization power is "integral to the consistent application of the Bankruptcy Code." Dornier, 453 F.3d at 233. "A bankruptcy court's equitable powers have long included the ability to look beyond form to substance." Id. at 233. The recharacterization decision itself rests on the "substance of the transaction" involved. Id. at 232 (emphasis in original).

Here, the settlement agreement is the "substance of the transaction" because it was the basis of the note purchase and gave rise the PEM's claims. The settlement agreement was negotiated and executed by Paragon and Debtor's principals. While PEM notes that it was neither a party to nor a signor of the settlement agreement, Paragon believed Debtor's principals

9

had the authority to bind PEM. Further, the settlement agreement specifically obligated Paragon to sell the loan to PEM. Indeed, the settlement agreement specifically outlined the sources of PEM's funding. It even obligated Paragon to loan PEM $292,000.00. Clearly, PEM knew of, participated in, and consented to those terms. While PEM itself may not have been obligated by the settlement agreement, the settlement agreement certainly obligated Paragon towards PEM.

Thus, the bankruptcy court properly "looked beyond form" to determine that the "substance of the transaction" was in fact the settlement agreement in which Debtor used PEM as an extension of itself to complete what was, in effect, a satisfaction of the Paragon loan. Moreover, the bankruptcy court's application of the Dornier factors adequately supported its recharacterization decision.

C.

PEM challenges several of the bankruptcy court's factual findings. Findings of fact by a bankruptcy court in proceedings within its full jurisdiction are reviewable only for clear error. In re Johnson, 960 F.2d 396, 399 (4th Cir. 1992). Under this standard, we will not reverse a bankruptcy court's factual finding that is supported by the evidence unless that finding is clearly wrong. In re ESA Envtl. Specialists, Inc., 709 F.3d 388, 399 (4th Cir. 2013). We will conclude that a finding is clearly

10

erroneous only if, after reviewing the record, we are left with "a firm and definite conviction that a mistake has been committed." Klein v. PepsiCo, Inc., 845 F.2d 76, 79 (4th Cir. 1988) (citation omitted).

Of the six errors claimed by PEM, none rise to the level of clear error. First, PEM challenges the court's alleged mischaracterization of both the $300,000.00 contribution by the members of PEM and the relief requested by Appellees. The bankruptcy court recharacterized the $300,000.00 portion of the $1,242,000.00 settlement of the $7,000,000.00 claim or in other words, exactly the relief sought by Appellees. The court made a detailed explanation of all the intricate moving parts of this complex dispute. To the extent the court failed to clearly explain each moving piece, it was not due to any mistaken fact, but rather to the unwieldy jargon associated with this type of litigation.

Next, PEM contends the court was in error by stating that Stanley Jacobsen was the sole member of PEM at the time of the settlement agreement. This fact appears to be incorrect as the evidence, discussed above, is that the members of PEM were Stanley Jacobsen, Robert B. Conaty, and the Trust. However, this minor mistake does not rise to the level of clear error. First, the court made this mistake in its recitation of undisputed facts. Secondly, the court obviously understood that PEM's

11

membership included all three members at all relevant times. In its analysis of the first <u>Dornier</u> factor, the court specifically noted that these three members were responsible for the $300,000.00.

PEM's four other claims of errors merely reargue the proper application of the <u>Dornier</u> factors. None constitute clear error.

III.

For the foregoing reasons, the judgment of the district court is **AFFIRMED**.

<u>AFFIRMED</u>